SWIGERT ET AL., APPELLANTS, *v.* MILLER ET AL., APPELLEES.

(No. C-73021—Decided October 1, 1973.)

*Messrs. Lindhorst & Dreidame, Mr. James L. O'Connell* of counsel, *Mr. S. Wayne Wright,* and *Mr. Philip S. Olinger,* for appellees.

*Mr. James R. Rimedio* and *Ms. Marlene P. Manes,* for appellants.

HESS, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, Ohio, granting a summary judgment in favor of defendants, the appellees, herein.

Plaintiff James Swigert, an appellant, hereinafter referred to as James, is a minor. He was properly admitted to and began attending the Cincinnati public schools on September 8, 1963. On September 28, 1970, James' father, plaintiff Earl Swigert, also an appellant, hereinafter referred to as Mr. Swigert, was advised by defendant Paul A. Miller, acting in his capacity as superintendent of the Cincinnati public schools, that James was being excluded from further school attendance pursuant to the authority of R. C. 3321.-04(A)(1), which states in part:

"Excuses from future attendance at or past absence from school may be granted for the causes, by the authorities, and under the following conditions: (A) the superintendent of schools of the district in which the child resides may excuse him from attendance for any part of the remainder of the current school year upon satisfactory showing of either of the following facts: (1) That his bodily or mental condition does not permit his attendance at school during such period." The exclusion was to continue for the remainder of the current school year. Mr. Swigert was further advised that the exclusion may be terminated prior to such time if medical evidence acceptable to school personnel indicates a change in James' condition which would permit his returning to school. No medical reason for the exclusion was given and no opportunity to challenge the basis of such exclusion was afforded.

Between September 28, 1970, the date of James' exclusion, and February 1, 1971, the date on which James was readmitted to the Cincinnati public schools, Mr. Swigert requested and demanded home educational instruction for his son James. No educational instructions, counseling, or medical services were provided by defendants during the period of such exclusion.

On July 13, 1971, plaintiffs filed a complaint in the Court of Common Pleas for damages pursuant to Title 42,

Section 1983, U. S. Code, "to redress the deprivation under color of state law and custom and usage of rights protected by the Fourteenth Amendment of the United States Constitution." Plaintiffs alleged in their complaint that James was at all times mentioned in such complaint in proper medical, physical and mental condition to attend school; that the arbitrary actions of defendants-appellees in excluding James is neither based upon statutory authority, written regulations, valid reasons, nor ascertainable standards; and that James has been denied his right to an education without due process of law and equal protection, in violation of the Fourteenth Amendment to the United States Constitution.

Subsequent to the filing of plaintiffs' complaint, defendants timely filed a motion to dismiss with attached affidavits which the trial court properly treated as a motion for summary judgment in accordance with Rule 12 (B), Ohio Rules of Civil Procedure. The trial court granted summary judgment in favor of defendant, and it is upon this state of the record that plaintiffs institute this appeal.

Plaintiffs present two assignments of error. In assignment one, they make the claim that "it is error under the Federal Civil Rights Act (42 U. S. C. A. 1983) to hold that school officials are not liable to respond in damages wherein attempting to carry out their official responsibilities they act unlawfully or unconstitutionally."

Title 42, Section 1983, U. S. Code upon which plaintiffs base their claim for damages, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress."

A literal interpretation of this statute would make every person liable who, under color of state law, deprives another person of his civil rights. It is well settled that

this section imposes liability upon state officials for acts done within or without the scope of their authority. *Monroe* v. *Page*, 365 U. S. 167. Furthermore, the statute is cast in terms so broad as to indicate that there never could be a defense of governmental immunity in suits brought under such section. However, despite the broad language of the statute, it has been authoritatively determined that it was not the intent of Congress in enacting such section to abolish all common law immunities. *Pierson* v. *Ray,* 386 U. S. 547.

The doctrine of governmental immunity has been utilized to prevent the abrogation of immunity of legislators for acts within their legislative function, *Tenney* v. *Brandhove,* 341 U. S. 367, and immunity of judges for acts in the discharge of their judicial function, *Pierson* v. *Ray, supra.* This concept of immunity under such section has further been extended to a wide variety of judicial and quasi-judicial officers by federal courts.

It is clear that state administrative officials, such as the defendants in the instant case, are not entitled to the absolute immunity which has been extended to judicial and legislative officials because such an application would be a complete frustration of the purpose of the Congress in enacting 42 U. S. C. 1983.

In *Cobb* v. *City of Malden* (C. A. 1), 202 F. 2d 701, 706, Judge Magruder in his concurring opinion stated, in referring to 42 U. S. C. 1983:

"* * * [T]he Act merely expresses a prima facie liability, leaving to the courts to work out, from case to case, the defenses by way of official privilege which might be appropriate to the particular case."

He went on to conclude, at 707:

"Hence I take it as a roughly accurate generalization that members of a city council and other public officers not in the exceptional category of officers having complete immunity, would have a qualified privilege giving them a defense against civil liability for harms caused by acts done by them in good faith in performance of their official duty as they understood it."

In *Francis* v. *Lyman* (C. A. 1), 216 F. 2d 583, Judge Magruder, writing for the court, affirmed a dismissal of a complaint under 42 U. S. C. 1983 against the superintendents of two state penal institutions. He stated, at 587, that the court thought it no longer appropriate to give effect to the statute in its literal wording. He stated at the same page, that it is the duty of the court to "* * * fit the statute as harmoniously as may be into the familiar and generally accepted legal background, and to confine its application, within reason, to those situations which might possibly have had the approval of the Congress if it had specifically adverted to the particular cases, bearing in mind the basic purposes which gave rise to the legislation in the first place".

Judge Magruder further stated, at 588:

"Where the act has been invoked in situations which no doubt were a major concern of the Reconstruction Congress—for instance * * * [in cases involving race discrimination] it is no defense to the state officials that they may have acted, not maliciously, but in the good faith belief that they were performing their official duty under what they thought was valid legislation. They are said to act at their peril * * * [b]ut beyond such situations, it seems to be the tendency of the decisions to restrict the application of the Civil Rights Act so as to avoid the appalling inflammation of delicate state-federal relationships which undoubtedly would ensue."

In *Westberry* v. *Fisher* (D. Me.), 309 F. Supp. 12, a class action under 42 U. S. C. 1983 to recover from the commissioner and certain administrative personnel of the Maine State Department of Health and Welfare, in their individual and official capacities, damages suffered by Aid to Families with Dependent Children recipients to whom were applied unconstitutional maximum budget and maximum grant regulations, the court approved the opinions in *Cobb* v. *City of Malden, supra,* and *Francis* v. *Lyman, supra,* and held that the defendants were not personally liable where there was no abuse of discretionary authority, malice, or ill-will.

This court is of the opinion that the federal civil rights act, Title 42, Section 1983, U. S. Code, was not intended to hold school officials liable in damages where in attempting to carry out their official responsibilites they act unlawfully or unconstitutionally, unless it is demonstrated that such action was done with malice, ill will, lack of good faith, or under circumstances amounting to a gross abuse of discretion. It follows that plaintiffs' first assignment of error is not well taken.

Plaintiffs contend in their second assignment of error that ''where there are conflicting affidavits which present to the court a conflict in what the trial judge has determined to be a substantial issue, then that trial judge errs in granting a summary judgment on behalf of the movant.'' It is clear that, as stated, the plaintiffs' second assignment of error is a correct statement of the law. However, in the instant case, a careful review of the record fails to disclose that there is a genuine issue as to any material fact. In affidavits filed in opposition to defendants' motion for summary judgment, plaintiffs have failed to set forth specific facts showing that there is a genuine issue for trial. Construing the evidence presented most strongly in plaintiffs favor, it is evident that they have failed to present any probative evidence tending to prove that defendants were acting maliciously or not in good faith in excluding James from further school attendance for the remainder of the current school year pursuant to the authority of R. C. 3321.04(A) (1). The second assignment of error is not well taken.

It is, therefore, the order of this court that the judgment of the Court of Common Pleas of Hamilton County, Ohio, be, and the same hereby is, affirmed.

*Judgment affirmed.*

SHANNON and PALMER, JJ., concur.